| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Maurice Black<br>Sonja Michelle Brown-Black | Citibank, N.A.; Ocwen Loan Servicing, LLC; Nectar Projects, Inc. |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Mitchell Goldstein & Jason Krumbein, Krumbein Consumer Legal Services, Inc., 1650 Willow Lawn Drive, Suite 300, Richmond, VA 23230, 804-673-4358 | |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Strip an unsecured lien under 11 U.S.C. 506

---

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Maurice Black and Sonja Michelle Brown-Black | BANKRUPTCY CASE NO.<br>3:10-bk-33207-DOT | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Virginia | DIVISION OFFICE<br>Richmond | NAME OF JUDGE<br>D.O. Tice |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Mitchell P. Goldstein, Esq., VSB 40613 | | |
| DATE<br>October 13, 2010 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Mitchell P. Goldstein, Esq. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, *unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

*Per LBR 7003-1, in the EDVA, a properly completed Adversary Proceeding Cover Sheet is required.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | | |
|---|---|---|---|
| In Re: | Maurice Black | Case No. | 3:10-bk-33207-DOT |
| | Sonja Michelle Brown-Black, | Chapter | 13 |
| | Debtors. | | |

**Maurice Black and Sonja Michelle Brown-Black,**
        **Plaintiffs.**

      **v.**                      **APN:**     **3:10-AP-_____-DOT**

**Citibank, N.A., as Trustee for the registered holders of Structured Asset Securities**
        **Corporation, Mortgage Pass-Through Certificates, Series 2006-S2,**
**Ocwen Loan Servicing, LLC**
**Nectar Projects, Inc.**
        **Defendants.**


### COMPLAINT OF THE DEBTOR PURSUANT TO 11 U.S.C. SECTION 506(a) AND BANKRUPTCY RULE 3012 TO DETERMINE THE VALUE OF SECURITY AND CREDITOR'S ALLOWED SECURED CLAIM

**COME NOW** the Plaintiffs, by counsel, and for her complaint respectfully represents as follows:

1.    This is an action brought by the Plaintiff pursuant to 11 U.S.C. § 506(a) and F.R.Bankr.P. 3012 to determine the value of the interest of the Defendants in the residential real estate of the debtor and determine the amount of the allowed secured claim of the Defendants.

### JURISDICTION, VENUE AND CORE PROCEEDING

2.    The Plaintiffs allege that this is a core proceeding as that term is defined by 28 U.S.C. § 157(b)(2) in that it concerns claims and matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

Mitchell P. Goldstein, Esq. VSBN 40613
mgoldstein@krumbeinlaw.com
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, VA 23230
804.673.4358 office, 804.673.4350 fax

3. The Plaintiffs further allege that this Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2).

4. The Plaintiffs further allege that venue is properly laid in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## PARTIES

5. Plaintiffs Maurice Black and Sonja Michelle Brown-Black (the "Plaintiffs") are Debtors-in-Bankruptcy pursuant to 11 U.S.C. §101(13).

6. Upon information and belief, defendant, Citibank, N.A., as Trustee for the registered holders of Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-S2 ("Citibank"), is the current owner of a note and second deed of trust on the plaintiffs' property and is a creditor, pursuant to 11 U.S.C. §101(10)(A).

7. Upon information and belief, defendant Citibank is a National Bank that may be served at its corporate headquarters at the office of its Executive Vice President and Director Alan S. MacDonald, 399 Park Avenue, New York, New York 10043.

8. Upon information and belief, defendant, Ocwen Loan Servicing, LLC, (hereinafter "Ocwen") is the servicer of that note.

9. Upon information and belief, defendant Ocwen is a Delaware LLC, registered with the State Corporation Commission, with a Registered Agent, and may be served at Corporation Service Company, 11 S. 12th Street, P.O. Box 1463, Richmond, VA 23218

10. 4701 Cox Road, Suite 301, Glen Allen, VA 23060.

11. Upon information and belief, defendant Nectar Projects, Inc., is the Trustee under a recorded Deed of Trust allegedly held by defendant Citibank, successor to the now-bankrupt/defunct Lehman Brothers Bank, FSB.

Mitchell P. Goldstein, Esq. VSBN 40613
mgoldstein@krumbeinlaw.com
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, VA 23230
804.673.4358 office, 804.673.4350 fax

- 2 -

12.     Upon information and belief, defendant Nectar Projects, Inc. is a Virginia Corporation, registered with the State Corporation Commission, with a Registered Agent, and may be served at Tina B. McDaniel, 104 N. Bailey Lane, Suite 100 Purcellville, VA 20132.

## FACTS

13.     Plaintiffs commenced this case by filing, on May 3, 2010, a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code, in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division.

10.     The Plaintiffs own real estate situated in the County of Henrico, Virginia known as 2818 Skelton Street by way of Deed recorded in the Circuit Court of the County of Henrico, Virginia in Book 4103 at Page 0394.  The legal description of that property is as follows:

> ALL THAT CERTAIN LOT PIECE OR PARCEL OF LAND WITH ALL
> THE IMPROVEMENTS THEREON AND APPURTENANCES THEREUNTO
> BELONGING, LYING AND BEING IN HENRICO COUNTY,
> VIRGINIA AND DESIGNATED AS LOT 1, BLOCK D, SECTION C,
> ON THE PLAN OF CLARENDON SUBDIVISION, WHICH PLAN IS
> OF RECORD IN PLAT BOOK 36, PAGES 48 AND 49, IN THE
> CLERK'S OFFICE CIRCUIT COURT OF HENRICO COUNTY,
> VIRGINIA, REFERENCE TO WHICH PLAT IS HEREBY MADE FOR
> A MORE PARTICULAR DESCRIPTION OF THE SAID LOT.

11.     Defendant Citibank is the alleged assignee of a promissory note executed by Plaintiffs secured by a Deed of Trust executed by the Plaintiff and recorded in Book 4103 at Page 0420.

   a.) The original holder for the Deed of Trust was the now-bankrupt/defunct Lehman Brothers Bank, FSB.

   b.) The Trustee for the Deed of Trust is defendant Nectar Projects, Inc.

   c.) The servicing company for the note is defendant Ocwen.

Mitchell P. Goldstein, Esq. VSBN 40613
mgoldstein@krumbeinlaw.com
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, VA 23230
804.673.4358 office, 804.673.4350 fax

12. At the time of the Bankruptcy, the principal residence was worth no more than $137,000 per Schedule A of the petition. According to a recent appraisal, it is actually worth approximately $135,000 (see Exhibit "A"). The property was subject to a first Deed of Trust recorded in Book 4103 at Page 0396 with a payoff of approximately $139,535.24 (see Exhibit "B").

13. No security exists for any Deed of Trust other than the first. All liens other than the first deed of trust are not "secured only by a security interest in real property that is the debtor's principal residence." Therefore, the Plaintiff is not barred from modifying their rights under 11 U.S.C. 1322(b)(2).

14. Pursuant to 11 U.S.C. Section 506(a), the Defendants have no allowable secured claim regarding the claim for the second mortgage loan on the subject real estate.

## OBJECTION TO PROOF OF CLAIM

15. The Plaintiffs reallege all facts previously stated.

16. On May 11, 2010, defendant Ocwen filed Proof of Claim 1 with a copy of the Deed of Trust endorsed in blank from Lehman Brothers.

17. Any timely filed claim of the Defendants for the second mortgage loan is allowable only as an unsecured claim and to the extent that no such claim was filed, the Defendant has no claim against this estate.

18. Claim number 1, filed by defendant Ocwen on behalf of defendant Citibank should be disallowed as secured claim and allowed only as an unsecured claim.

Mitchell P. Goldstein, Esq. VSBN 40613
mgoldstein@krumbeinlaw.com
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, VA 23230
804.673.4358 office, 804.673.4350 fax

**WHEREFORE**, the Plaintiff respectfully requests of the Court as follows:

A.     That this Court determine that the Defendants have no secured interest for the loan secured by the second deed of trust on the residential real estate of the Debtors/Plaintiffs;

B.     That this Court order the Defendants to cancel the second mortgage lien on the residential real estate of the debtor pursuant to 11 U.S.C. § 506(d), immediately upon the entry of the Discharge Order and deliver the same to the attorney for the Debtors/Plaintiffs within 20 days from the date of the entry of the said order at no charge or fee for the aforesaid cancellation and delivery;

C.     That this Court direct the Trustee that any timely filed proof of claim of the Defendants for the second mortgage lien be treated as an unsecured claim under the plan;

D.      That the attorney for the Plaintiffs be awarded reasonable legal fees;

E.     That the Plaintiffs have such other and further relief as to the Court may seem just and proper.

Respectfully Submitted,

**MAURICE BLACK**
**SONJA MICHELLE BROWN-BLACK**

BY COUNSEL:   /s/ Mitchell P. Goldstein, Esq.
Mitchell P. Goldstein, Esq., VSB 40613
mgoldstein@krumbeinlaw.com
Krumbein Consumer Legal Services
1650 Willow Lawn Drive, Suite 300
Richmond, VA  23230
(804) 673-4350, (804) 673-4358 (fax)

Mitchell P. Goldstein, Esq. VSBN 40613
mgoldstein@krumbeinlaw.com
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, VA 23230
804.673.4358 office, 804.673.4350 fax

- 5 -



# APPRAISAL OF REAL PROPERTY

### LOCATED AT:
2818 Skelton St
CLARENDON SC C BL D LT 1 7 A1 22
Richmond, VA  23223-1128

### FOR:
Krumbein Consumer Legal Services, Inc
1650 Willow Lawn Drive
Richmond, VA  23230

### AS OF:
September 16, 2010

### BY:
Nelson Pollard
Certified Residential Appraiser

Nelson Pollard
Pollard Appraisals, LLC
POB 1131
Mechanicsville, VA 23111

Krumbein Consumer Legal Services, Inc
1650 Willow Lawn Drive
Richmond, VA 23230

Re: Property:   2818 Skelton St
                Richmond, VA 23223-1128
    Borrower:   Maurice M & Sonya Black
    File No.:    2010-044

In accordance with your request, we have appraised the above referenced property.  The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me or any of my staff if we can be of additional service to you.

Sincerely,

*Nelson Pollard*

Nelson Pollard
Certified Residential Appraiser

| Client | Krumbein Consumer Legal Services, Inc | | File No. 2010-044 | | |
|---|---|---|---|---|---|
| Property Address | 2818 Skelton St | | | | |
| City | Richmond | County Henrico | State VA | Zip Code 23223-1128 | |
| Lender | Krumbein Consumer Legal Services, Inc | | | | |

## TABLE OF CONTENTS

Cover Page ............................................................................................................................................. 1
Letter of Transmittal ............................................................................................................................... 2
Table of Contents ................................................................................................................................... 3
URAR ...................................................................................................................................................... 4
Additional Comparables 4-6 ................................................................................................................... 10
General Text Addendum ......................................................................................................................... 11
Subject Photos ....................................................................................................................................... 12
Subject Photos Interior .......................................................................................................................... 13
Subject Photos Interior .......................................................................................................................... 14
Subject Photos Other ............................................................................................................................. 15
Comparable Photos 1-3 .......................................................................................................................... 16
Comparable Photos 4-6 .......................................................................................................................... 17
Building Sketch (Page - 1) ...................................................................................................................... 18
Zoning Map ............................................................................................................................................ 19
Location Map .......................................................................................................................................... 20
Flood Map .............................................................................................................................................. 21

# Uniform Residential Appraisal Report

**File #** 2010-044

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 2818 Skelton St | City Richmond State VA Zip Code 23223-1128 |

**SUBJECT**

Borrower Maurice M & Sonya Black | Owner of Public Record Maurice M & Sonya Black | County Henrico

Legal Description CLARENDON SC C BL D LT 1 7 A1 22

Assessor's Parcel # 805-735-5962 | Tax Year 2010 | R.E. Taxes $ 1,266.72

Neighborhood Name Clarendon | Map Reference 8012-F4 | Census Tract 2010.01

Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ 00.00 | ☐ PUD HOA $ ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Establish market value for bankruptcy case.

Lender/Client Krumbein Consumer Legal Services, Inc Address 1650 Willow Lawn Drive , Suite 300, Richmond, VA 23230

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). MLS.

**CONTRACT**

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A Date of Contract | Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit 90 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | 20 Low New | | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | | 180 High 70 | | Multi-Family 5 % |
| Neighborhood Boundaries See attached addenda. | | | | | | 104 Pred. 25 | | Commercial 5 % |
| | | | | | | | | Other % |

Neighborhood Description The subject property is in an older quite neighborhood, that is convenient to major intersection and thoroughfare that leads to Richmond and US 64 and Near US 295. most of the homes are smaller mid 60's ranch homes with new homes being built near by.

Market Conditions (including support for the above conclusions) The area has been impacted by the decline in the real estate market, but demand in the area is maintained due to the size of the homes since it is an area where new home owners can start their real estate interest. The average sales price for homes sold in the last 12 months was $103,788, those homes currently active in the sales market average price is $104,760.

**SITE**

| Dimensions See attached zoning map | Area 0.5 acres | Shape Square | View Other Homes |
|---|---|---|---|

Specific Zoning Classification R-3 | Zoning Description Single Family Residential (Suburban)

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | | | Street Asphalt | ☒ | |
| Gas | ☒ | | Water ☒ | | Alley None | | |
| | | | Sanitary Sewer ☒ | | | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No FEMA Flood Zone X FEMA Map # 51087C0135C FEMA Map Date 12/18/2007

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | Brick-Average | Floors | Carpt/Vinyl Avg |
| # of Stories 1 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | Brick/Average | Walls | Panel/Sheet/Avg |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area sq.ft. | | Roof Surface | Comp-Avg | Trim/Finish | Wd Stain/Avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish % | | Gutters & Downspouts | Aluminum-Avg | Bath Floor | Tile/Avg |
| Design (Style) Ranch | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | Db Hung-/Gd | Bath Wainscot | Tile/Avg |
| Year Built 1968 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | Vinyl-Yes | Car Storage | ☐ None |
| Effective Age (Yrs) 15 | | ☐ Dampness ☐ Settlement | | Screens | Alumium/Average | ☒ Driveway # of Cars 1 |
| Attic ☐ None | | Heating ☐ FWA ☐ HWBB ☒ Radiant | | Amenities | ☐ Woodstove(s) # | Driveway Surface Asphalt-Average |
| ☒ Drop Stair ☐ Stairs | | ☐ Other | Fuel Electric | ☒ Fireplace(s) # 1 ☒ Fence Chain Link | ☐ Garage # of Cars |
| ☐ Floor ☐ Scuttle | | Cooling ☐ Central Air Conditioning | | ☐ Patio/Deck Patio ☒ Porch Front | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool ☐ Other | ☐ Att. ☒ Det. ☐ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 5 Rooms 2 Bedrooms 1.5 Bath(s) 1,271 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). Thermal windows, security system.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). The subject property is in good condition. the home has 2 bedrooms and den with good size living room with wood burning fireplace and eat in kitchen. In addition, the home has an attached utility room with 1/2 bath. its den has real wood panel walls. The home sits on a very large lot (one half acre) with usable 1 car garage. the landscaping around the home is well maintained and a front masonry porch.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

**File # 2010-044**

There are **45** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **53,900** to $ **159,500** .

There are **53** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **29,900** to $ **145,000** .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 2818 Skelton St Richmond, VA 23223-1128 | 1700 Zephyer Rd Richmond, VA 23222-1554 | | 3109 Aldersgate DR Richmond, VA 23223 | | 2207 Arbor DR Richmond, VA 23222 | |
| Proximity to Subject | | 1.29 miles NW | | 0.23 miles SE | | 0.81 miles NW | |
| Sale Price | $ N/A | $ | 127,000 | $ | 145,000 | $ | 119,500 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 100.24 sq.ft. | | $ 117.31 sq.ft. | | $ 89.18 sq.ft. | |
| Data Source(s) | | MLS/Tax Records | | MLS/Tax Records | | MLS/Tax Records | |
| Verification Source(s) | | External Viewing/MLS | | External Viewing/MLS | | External Viewing/MLS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | FHA New | | Conventional | | Conventional | |
| Date of Sale/Time | | 06/15/2010 | | 09/03/2010 | | 03/31/2010 | |
| Location | Clarendon | Springdale | | Clarendon | | See attached ad | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 0.5 acres | 0.3581 acres | | 0.42 acres | | 0.31 acres | |
| View | Other Homes | Other Homes | | Other Homes | | Other Homes | |
| Design (Style) | Ranch | Ranch | | Ranch | | Ranch | |
| Quality of Construction | Average | Average | | Good | | Average | |
| Actual Age | 42 | 54 | | 44 | | 50 | |
| Condition | Average | Average | | Good | -5,000 | Average | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5  2  1.5 | 7  3  2 | -2,500 | 6  3  1.5 | | 7  3  1.5 | |
| Gross Living Area | 1,271 sq.ft. | 1,267 sq.ft. | 0 | 1,236 sq.ft. | 0 | 1,340 sq.ft. | 0 |
| Basement & Finished Rooms Below Grade | Crawl Space | Crawl Space | | Crawl Space | | Crawl Space | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Radiant/CAC | Forced Air/CAC | | Radi/CAC | | HeatPmp/CAC | -2,000 |
| Energy Efficient Items | Thermal window | None noted | +2,000 | None noted | +2,000 | None Noted | +2,000 |
| Garage/Carport | 1 Car garage | 1 car garage | | None | +5,000 | Det2 car garage | -5,000 |
| Porch/Patio/Deck | Porch/Pto/Fenc | Pto/Fence | +3,000 | Patio/Fence | +3,000 | Enclsd Porch | -5,000 |
| Days on Market | N/A | DOM 5 | | DOM 32 | | DOM 166 | |
| Other | | Security System | | None | | None | |
| Other | | None | +1,000 | None | +1,000 | None | |
| Net Adjustment (Total) | | ☒ +  ☐ - | $ 3,500 | ☒ +  ☐ - | $ 6,000 | ☐ +  ☒ - | $ -10,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 2.8 % Gross Adj. 6.7 % | $ 130,500 | Net Adj. 4.1 % Gross Adj. 11.0 % | $ 151,000 | Net Adj. 8.4 % Gross Adj. 11.7 % | $ 109,500 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s) MLS/Tax Records

My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s) MLS/Tax Records

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/12/2006 | 02/01/2000 | 12/19/2003 | 09/23/2002 |
| Price of Prior Sale/Transfer | $159,000 | $0 | $119,000 | $119,950 |
| Data Source(s) | MLS/Tax Records | MLS/Tax Records | MLS/Tax Records | MLS/Tax Records |
| Effective Date of Data Source(s) | 9/13/2010 | 09/15/2010 | 09/15/2010 | 09/15/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Comparables 1-3 did not have any prior sales. However, comparables 4-6 all have prior sales that had foreclosures.

Summary of Sales Comparison Approach   The subject property area has been impacted by the down turn in the real estate market, and has also suffered a number of home foreclosures in the market that have influenced the overall sales market in the subject area.Comparable #2 has a new dimensional shingle roof (condition adjustment).

Indicated Value by Sales Comparison Approach $ 135,000

Indicated Value by: Sales Comparison Approach $ **135,000**  Cost Approach (if developed) $ 146,565  Income Approach (if developed) $

The Sales Comparison, Cost Approach  was considered. The most significant factor in this area were the market conditions.The subject property was most like comparables 1-3. The income method was not used because home were owner occupied.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ **135,000** , as of **September 16, 2010** , which is the date of inspection and the effective date of this appraisal.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

**File # 2010-044**

**The appraisal is for the restricted use of the owner and his attorney and related parties concerning the owners bankruptcy case and is not for the purposes of obtaining a financial mortgage.**

**ADDITIONAL COMMENTS**

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   The land values is based on Appraisers experience and recent land sales in the area: MLS#: 1008658 for 1410 Pensacola Ave for $13,000 on 08/17/2010 ( 0.5135 acres) .

| | | |
|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE ............................................................. =$ | 25,000 |
| Source of cost data  Marshall & Swift - Residential Cost Handbook | DWELLING           1,271  Sq.Ft. @ $          87.66 ............. =$ | 111,416 |
| Quality rating from cost service  Average   Effective date of cost data  12/2009 | rawl Space  Sq.Ft. @ $                   ............. =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | ............. =$ | |
| Cost data was developed from Marshall & Swift handbook and local | Garage/Carport        280  Sq.Ft. @ $         38.11 ............. =$ | 10,671 |
| sources. Site value estimated from land sales & analysis. Depreciation | Total Estimate of Cost-New ............. =$ | 122,087 |
| was also calculated using Marshall & Swift. Economic life estimated to | Depreciation        30,522  |  Physical | Functional | External | =$( | 30,522) |
| be 45-50 years remaining. | Depreciated Cost of Improvements ......................................... =$ | 91,565 |
| | "As-is" Value of Site Improvements ......................................... =$ | 15,000 |
| | Porch/Fence/Patio/Driveway/Landscape ............. =$ | 15,000 |
| Estimated Remaining Economic Life (HUD and VA only)             45 Years | INDICATED VALUE BY COST APPROACH ......................................... =$ | 146,565 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | |
|---|---|---|
| Estimated Monthly Market Rent $ | X  Gross Rent Multiplier                = $ | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | | |

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes   ☐ No   Unit type(s)   ☐ Detached   ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?   ☐ Yes   ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?   ☐ Yes   ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?   ☐ Yes   ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes   ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 2010-044

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

# Uniform Residential Appraisal Report

File # 2010-044

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

# Uniform Residential Appraisal Report

File # 2010-044

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature *Nelson Pollard* | Signature _____ |
| Name  Nelson Pollard | Name _____ |
| Company Name  Pollard Appraisals | Company Name _____ |
| Company Address  PO Box 1131, Mechanicsville, VA 23111-1131 | Company Address _____ |
| | |
| Telephone Number  (804) 730-9012 | Telephone Number _____ |
| Email Address  Pollard_Appraisals@msn.com | Email Address _____ |
| Date of Signature and Report  September 20, 2010 | Date of Signature _____ |
| Effective Date of Appraisal  September 16, 2010 | State Certification # _____ |
| State Certification #  4001 007773 | or State License # _____ |
| or State License # | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State  VA | |
| Expiration Date of Certification or License  11/30/2011 | **SUBJECT PROPERTY** |
| | |
| **ADDRESS OF PROPERTY APPRAISED** | ☐ Did not inspect subject property |
| 2818 Skelton St | ☐ Did inspect exterior of subject property from street |
| Richmond, VA 23223-1128 | Date of Inspection _____ |
| APPRAISED VALUE OF SUBJECT PROPERTY $  135,000 | ☐ Did inspect interior and exterior of subject property |
| **LENDER/CLIENT** | Date of Inspection _____ |
| Name  Jason Krumbein | |
| Company Name  Krumbein Consumer Legal Services, Inc | **COMPARABLE SALES** |
| Company Address  1650 Willow Lawn Drive , Suite 300, Richmond, VA 23230 | ☐ Did not inspect exterior of comparable sales from street |
| Email Address  KrumbeinLaw@gmail.com | ☐ Did inspect exterior of comparable sales from street |
| | Date of Inspection _____ |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

**File # 2010-044**

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address 2818 Skelton St Richmond, VA 23223-1128 | | 2822 Skelton Street Richmond, VA 23223 | | 4003 Austin AVE Richmond, VA 23222-1707 | | 3711 Martin AVE Richmond, VA 23222 | |
| Proximity to Subject | | 0.06 miles E | | 0.87 miles NW | | 0.95 miles W | |
| Sale Price | $ N/A | $ | 149,900 | $ | 85,548 | $ | 72,750 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 113.05 sq.ft. | | $ 68.55 sq.ft. | | $ 67.67 sq.ft. | |
| Data Source(s) | | MLS/Tax Record | | MLS/Tax Records | | MLS/Tax Records | |
| Verification Source(s) | | External Viewing/MLS | | External Viewing/MLS | | External Viewing/MLS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Conventional | | Other | | Cash | |
| Date of Sale/Time | | ACTIVE | -7,500 | 8/17/2010 | | 03/03/2010 | |
| Location | Clarendon | Clarendon | | Austin Heights | | Austin Place | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 0.5 acres | 0.51 acres | | 0.25 acres | +5,000 | 0.42 acres | |
| View | Other Homes | Other Homes | | Other Homes | | Other Homes | |
| Design (Style) | Ranch | Ranch | | Ranch | | Ranch | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 42 | 43 | | 52 | | 41 | |
| Condition | Average | Average | | Fair | +10,000 | Fair | +10,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5 2 1.5 | 7 3 2 | -2,500 | 6 3 1.5 | | 6 3 1 | +2,500 |
| Gross Living Area | 1,271 sq.ft. | 1,326 sq.ft. | 0 | 1,248 sq.ft. | 0 | 1,075 sq.ft. | +9,800 |
| Basement & Finished Rooms Below Grade | Crawl Space | Crawl Space | | Crawl Space | | Crawl Space | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Radiant/CAC | Forcd Air/CAC | | HeatPmp/CAC | | Rad/Window | +5,000 |
| Energy Efficient Items | Thermal window | None Noted | +2,000 | None noted | +2,000 | None Noted | +2,000 |
| Garage/Carport | 1 Car Garage | 2 Car Garage | -5,000 | None | +5,000 | None | +5,000 |
| Porch/Patio/Deck | Porch/Pto/Fenc | None | +5,000 | Porch | +2,000 | None | +5,000 |
| Days on Market | N/A | DOM 51 | | DOM 102 | | DOM 32 | |
| Other | Security System | None Noted | +1,000 | None | +1,000 | None | +1,000 |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -7,000 | ☒ + ☐ - $ | 25,000 | ☒ + ☐ - $ | 40,300 |
| Adjusted Sale Price of Comparables | | Net Adj. 4.7 % Gross Adj. 15.3 % $ | 142,900 | Net Adj. 29.2 % Gross Adj. 29.2 % $ | 110,548 | Net Adj. 55.4 % Gross Adj. 55.4 % $ | 113,050 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/12/2006 | 06/11/2010 | 02/02/2010 | 12/19/2009 |
| Price of Prior Sale/Transfer | $159,000 | $117,041 | $117,166 | $88,679 |
| Data Source(s) | MLS/Tax Records | MLS/Tax Records | MLS/Tax Records | MLS/Tax Records |
| Effective Date of Data Source(s) | 9/13/2010 | 09/15/2010 | 9/15/2010 | 9/15/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Prior Sale for comparable #4, 5 and 6 were foreclosures.

Analysis/Comments    Adjustment for comparable properties #5 and 6 reflect transactions are not arms length.

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

# General Text Addendum

| Client | Krumbein Consumer Legal Services, Inc | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2818 Skelton St | | | | | |
| City | Richmond | County | Henrico | State | VA | Zip Code 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc | | | | | |

• **URAR : Comp 2 Location**
West Ravenswood

• **URAR : Neighborhood - Boundaries**
The subject property is near the nexus of the cross roads of Mechanicsville Turnpike and Laburnum Avenue, and is bounded by the Chickahominy River to the to the North, the City of Richmond/Henrico County boarder to the West, Creighton Road to the East and US 64 to the South.

# Subject Photos

| Client | Krumbein Consumer Legal Services, Inc | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2818 Skelton St | | | | | |
| City | Richmond | County | Henrico | State | VA | Zip Code 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc | | | | | |



**Subject Front**

2818 Skelton St

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,271 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.5 |
| Location | Clarendon |
| View | Other Homes |
| Site | 0.5 acres |
| Quality | Average |
| Age | 42 |



**Subject Rear**



**Subject Street**

# Subject Photos Interior

| Client | Krumbein Consumer Legal Services, Inc | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2818 Skelton St | | | | | |
| City | Richmond | County | Henrico | State | VA | Zip Code | 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc | | | | | |



### Subject Interior

**2818 Skelton St**

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,271 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.5 |
| Location | Clarendon |
| View | Other Homes |
| Site | 0.5 acres |
| Quality | Average |
| Age | 42 |



### Subject Interior



### Subject Interior

Form PIC3x5.SI — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Subject Photos Interior

| Client | Krumbein Consumer Legal Services, Inc | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2818 Skelton St | | | | | |
| City | Richmond | County | Henrico | State | VA | Zip Code 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc | | | | | |



### Subject Interior

**2818 Skelton St**

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,271 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.5 |
| Location | Clarendon |
| View | Other Homes |
| Site | 0.5 acres |
| Quality | Average |
| Age | 42 |

### Subject Interior

### Subject Interior



# Subject Photos Other

| | |
|---|---|
| Client | Krumbein Consumer Legal Services, Inc |
| Property Address | 2818 Skelton St |
| City | Richmond County Henrico State VA Zip Code 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc |



### Subject Garage

2818 Skelton St

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,271 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.5 |
| Location | Clarendon |
| View | Other Homes |
| Site | 0.5 acres |
| Quality | Average |
| Age | 42 |



### Subject Backyard



### Subject Rear Patio

## Comparable Photos 1-3

| Client | Krumbein Consumer Legal Services, Inc | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2818 Skelton St | | | | | | |
| City | Richmond | County | Henrico | | State | VA | Zip Code 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc | | | | | | |



### Comparable 1

1700 Zephyer Rd
| | |
|---|---|
| Prox. to Subject | 1.29 miles NW |
| Sales Price | 127,000 |
| Gross Living Area | 1,267 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Springdale |
| View | Other Homes |
| Site | 0.3581 acres |
| Quality | Average |
| Age | 54 |



### Comparable 2

3109 Aldersgate DR
| | |
|---|---|
| Prox. to Subject | 0.23 miles SE |
| Sales Price | 145,000 |
| Gross Living Area | 1,236 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | Clarendon |
| View | Other Homes |
| Site | 0.42 acres |
| Quality | Good |
| Age | 44 |



### Comparable 3

2207 Arbor DR
| | |
|---|---|
| Prox. to Subject | 0.81 miles NW |
| Sales Price | 119,500 |
| Gross Living Area | 1,340 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | See attached addenda. |
| View | Other Homes |
| Site | 0.31 acres |
| Quality | Average |
| Age | 50 |

## Comparable Photos 4-6

| | |
|---|---|
| Client | Krumbein Consumer Legal Services, Inc |
| Property Address | 2818 Skelton St |
| City | Richmond | County Henrico | State VA | Zip Code 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc |



### Comparable 4

2822 Skelton Street

| | |
|---|---|
| Prox. to Subject | 0.06 miles E |
| Sales Price | 149,900 |
| Gross Living Area | 1,326 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Clarendon |
| View | Other Homes |
| Site | 0.51 acres |
| Quality | Average |
| Age | 43 |



### Comparable 5

4003 Austin AVE

| | |
|---|---|
| Prox. to Subject | 0.87 miles NW |
| Sales Price | 85,548 |
| Gross Living Area | 1,248 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | Austin Heights |
| View | Other Homes |
| Site | 0.25 acres |
| Quality | Average |
| Age | 52 |



### Comparable 6

3711 Martin AVE

| | |
|---|---|
| Prox. to Subject | 0.95 miles W |
| Sales Price | 72,750 |
| Gross Living Area | 1,075 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1 |
| Location | Austin Place |
| View | Other Homes |
| Site | 0.42 acres |
| Quality | Average |
| Age | 41 |

# Building Sketch

| | | | | | | |
|---|---|---|---|---|---|---|
| Client | Krumbein Consumer Legal Services, Inc | | | | | |
| Property Address | 2818 Skelton St | | | | | |
| City | Richmond | County | Henrico | State | VA | Zip Code 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc | | | | | |



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 1271.3 | 1271.3 |
| P/P | Porch | 108.0 | |
| | Patio | 149.5 | 257.5 |
| GAR | Garage | 280.0 | 280.0 |
| | | | |
| | Net LIVABLE Area | (Rounded) | 1271 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 11.0 x 11.0 | | 121.0 |
| 26.8 x 43.0 | | 1150.3 |
| | | |
| 2 Items | (Rounded) | 1271 |

# Zoning Map

| | |
|---|---|
| Client | Krumbein Consumer Legal Services, Inc |
| Property Address | 2818 Skelton St |
| City | Richmond | County | Henrico | State | VA | Zip Code | 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc |



# Location Map

| Client | Krumbein Consumer Legal Services, Inc | | | | |
|---|---|---|---|---|---|
| Property Address | 2818 Skelton St | | | | |
| City | Richmond | County  Henrico | | State  VA | Zip Code  23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc | | | | |



# Flood Map

| Client | Krumbein Consumer Legal Services, Inc | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2818 Skelton St | | | | | | |
| City | Richmond | County | Henrico | | State | VA | Zip Code 23223-1128 |
| Lender | Krumbein Consumer Legal Services, Inc | | | | | | |



B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Maurice Black & Sonja Michelle Brown-Black | Case Number: 10-33207-DOT |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): Aurora Loan Services, LLC | ☒ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent: Post Office Box 1706 Scottsbluff, Nebraska 69363 ATTN: Brenda Fulk Telephone number: (800) 776-9361 | Court Claim Number: 3 *(If known)* Filed on: 6/29 10 |
| Name and address where payment should be sent (if different from above): Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. ☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed: $ 139,535.24 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. | |
| If all or part of your claim is entitled to priority, complete item 5. | Specify the priority of the claim. |
| ☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2. Basis for Claim: money loaned (See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 3. Last four digits of any number by which creditor identifies debtor: 5137 | |
| 3a. Debtor may have scheduled account as: _____ (See instruction #3a on reverse side.) | |
| 4. Secured Claim (See instruction #4 on reverse side.) Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). |
| Nature of property or right of setoff: ☒Real Estate ☐ Motor Vehicle ☐ Other Describe: 2818 Skelton Street, Richmond, Va. | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). |
| Value of Property:$_____ Annual Interest Rate 9.125% | |
| Amount of arrearage and other charges as of time case filed included in secured claim, if any: $ 9,818.12 Basis for perfection: deed of trust | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| Amount of Secured Claim: $ 139,535.24 Amount Unsecured: $_____ | |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___). |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*) DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. If the documents are not available, please explain: | Amount entitled to priority: $_____ *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date: 8/27/10 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Marvin A. Jaffe, attorney for creditor | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE: Maurice Black                          Case No. 10-33207-DOT
Sonja Michelle Brown-Black

## BREAK DOWN OF PAYOFF

| | |
|---|---|
| Principal balance as of 5/03/10 | $130,750.07 |
| Accrued interest | 7,025.13 |
| Accrued late charges | 133.74 |
| Property inspection fees | 36.00 |
| Appraisal fee | 95.00 |
| Escrow advances | 1,346.30 |
| LESS: Suspense | - 1.00 |
| Attorney's fee | 150.00 |
| TOTAL PAYOFF | $139,535.24 |

## BREAKDOWN OF ARREARS

| | |
|---|---|
| Payments due November, 2009, through May, 2010, @ $1,262.75 each | $ 8,839.25 |
| Accrued late charges | 133.74 |
| Escrow shortage | 565.13 |
| Property inspection fees | 36.00 |
| Appraisal fee | 95.00 |
| LESS: Suspense | - 1.00 |
| Attorney's fee | 150.00 |
| TOTAL ARREARAGE | $ 9,818.12 |

100025440003114482
0038015723

## NOTE

April 13 , 2006                    RICHMOND              VIRGINIA
*Date*                               *City*                *State*

2818 SKELTON STREET,        RICHMOND,        VIRGINIA              23223
                            *Property Address*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $          31,800.00   (this amount will be called
"principal"), plus interest, to the order of the Lender. The Lender is
LEHMAN BROTHERS BANK, FSB

. I understand that the Lender may transfer this
Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called
the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of        12.250   %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $         333.24 .
I will make my payments on the      first      day of each month beginning on      June  .
2006          . I will make these payments every month until I have paid all of the principal and interest and any other charges,
described below, that I may owe under this Note. If, on  May 1, 2036                                        ,
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at 400 PROFESSIONAL DRIVE, SUITE 500
GAITHERSBURG, MD 20879                              or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of       15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.00       % of my overdue payment, but not less than U.S. $       16.67        and not more than
U.S. $    16.67    . I will pay this late charge only once on any late payment.

(B) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me
that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on
which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

(C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in
default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the
interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above,
the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be
paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example,
reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated
April 13, 2006             , protects the Note Holder from possible losses which might result if I do not keep
the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make
immediate payment in full of all amounts that I owe under this Note.

VIRGINIA · SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT

Form 394

-75(VA) (9304)

Page 1 of 2
VMP MORTGAGE FORMS - (800)521-7291

Initials:

100025440003114482
0038015723

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

## 10. HOMESTEAD EXEMPTION

I waive my Homestead Exemption.

_____ (Seal)
SONJA M BLACK  -Borrower

_____ (Seal)
MAURICE BLACK  -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

PAY TO THE ORDER OF
LEHMAN BROTHERS HOLDINGS, INC.
WITHOUT RECOURSE
LEHMAN BROTHERS BANK, FSB
_____ (Seal)
-Borrower
BY:
R. KW. BROOKS
VICE PRESIDENT

PAY TO THE ORDER OF
Aurora Loan Services, LLC
WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC. -Borrower
BY:
DENISE E. ELWELL
SENIOR VICE PRESIDENT
_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*(Sign Original Only)*

This is to certify that this is the Note described in and secured by a Deed of Trust dated APR 1 3 2006 on the Property located in HENRICO COUNTY , Virginia.

My Commission Expires: 12/31/07

_____
Notary Public

**Instrument Control Number**

[                    ]

LR 200606021029 04/17/2006 9 36 00 AM

0038015137

BK 4103PG0396

RECORD AND RETURN TO:
TRANSCONTINENTAL TITLE
5516 FALMOUTH ST. STE 363
RICHMOND, VA 23230

# Commonwealth of Virginia
## Land Record Instruments
## Cover Sheet - Form A

[ILS VLR Cover Sheet Agent 1 0 83]

| T A X | C O R P | | |
|---|---|---|---|

**Date of Instrument**   [4/13/2006   ]
**Instrument Type**   [DOT   ]

**Number of Parcels**   [   1]
**Number of Pages**   [   22]

**City** [ ] **County** [x]   [Henrico County          ]          (Box for Deed Stamp Only)

**First and Second Grantors**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [Black ] | [Sonja ] | [M ] | [ ] |
| [Black ] | [Maurice ] | [ ] | [ ] |

**First and Second Grantees**

| | Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|---|
| [x] | [Nectar Projects Inc ] | [ ] | [ ] | [ ] TR |
| | [ ] | [ ] | [ ] | [ ] |

**Grantee Address**   (Name)   [Nectar Projects Inc          ]
   (Address 1)   [751 Miller Drive          ]
   (Address 2)   [Suite G1          ]
   (City, State, Zip)   [Leesburg          ] [VA ] [20175 ]

**Consideration** [127,200 00   ] **Existing Debt** [0 00   ] **Assumption Balance** [0 00   ]

---

**Prior Instr  Recorded at  City** [ ] **County** [x]   [Henrico County          ] **Percent  in this Juris**   [   100]
**Book**   [   ]          **Page**   [   ]          **Instr No**   [          ]
**Parcel Identification No (PIN)**   [805-735-5962          ]
**Tax Map Num**   (if different than PIN)   [805-735-5962          ]
**Short Property Description**   [Lot 1, Block D, Section C, Clarendon          ]
   [          ]
**Current Property Address (Address 1)**   [2818 Skelton Street          ]
   (Address 2)   [          ]
   (City, State, Zip)   [Richmond          ] [VA ] [23223 ]

---

**Instrument Prepared By**   [Pamela Cioffi          ]
**Recording Paid for By**   [Transcontinental Title Company          ]
**Return Recording To**   (Name)   [Transcontinental Title Company          ]
   (Address 1)   [5516 Falmouth Street          ]
   (Address 2)   [Suite 302          ]
   (City, State, Zip)   [Richmond          ] [VA ] [23230 ]
**Customer Case ID**   [27-74497  mnb   ] [          ] [          ]



**Cover Sheet Page # 1 of 1**

BK4103PG0397

RECORD AND RETURN TO:
TRANSCONTINENTAL TITLE
5516 FALMOUTH ST, STE 303
RICHMOND, VA 23230

Return To:  AURORA LOAN SERVICES, LLC
601 5th Ave, PO Box 4000
Scottsbluff, NE 69363

Tax Map Reference #
805-735-5962
RPC/Parcel ID #

ESCROW #  27 74497

Prepared By  PAMELA CIOFFI
AURORA LOAN SERVICES
400 PROFESSIONAL DRIVE, SUITE 500
GAITHERSBURG, MD 20879

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

MIN   100025440003114458

The following information, as further defined below, is provided in accordance with Virginia law

This Deed of Trust is given by
SONJA M BLACK AND
MAURICE BLACK

, as

Borrower (trustor), to

Nectar Projects Inc  A VA Corporation

, as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

LOAN #: 0038015137

VIRGINIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3047 1/01

-6A(VA) (0102)

Page 1 of 15          Initials SMB / M B

VMP MORTGAGE FORMS (800)521 7291

100025440003114458

BK4103PG0398

(A) "Security Instrument" means this document, which is dated April 13, 2006
together with all Riders to this document

(B) "Borrower" is
  SONJA M BLACK AND
  MAURICE BLACK

Borrower is the trustor under this Security Instrument

(C) "Lender" is    LEHMAN BROTHERS BANK, FSB

Lender is a  Corporation
organized and existing under the laws of  UNITED STATES
Lender's address is   400 PROFESSIONAL DRIVE, SUITE 500, GAITHERSBURG, MD 20879

(D) "Trustee" is   Nectar Projects Inc. A VA Corporation

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation    whose    principal    office    is    located    in    Virginia    Trustee's    address    is
 751 Miller Drive, Suite G1, Leesburg, VA , 20175
"Trustee" is

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation    whose    principal    office    is    located    in    Virginia    Trustee's    address    is

(E) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns MERS is the beneficiary under this
Security Instrument   MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS

(F) "Note" means the promissory note signed by Borrower and dated April 13, 2006
The Note states that Borrower owes Lender
  ONE HUNDRED TWENTY SEVEN THOUSAND TWO HUNDRED & 00/100                       Dollars
(U S $     127,200.00   ) plus interest Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   May 1, 2036              The interest rate
stated in the Note is          EIGHT AND 125 THOUSANDTHS
                                              percent (        8 125      %)
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in
accordance with the attached Adjustable Rate Rider

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property "

Initials SAB/MB

-6A(VA) (0102)                          Page 2 of 15                          Form 3047 1/01

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower The following Riders are to be executed by Borrower [check box as applicable]

- [X] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] 1-4 Family Rider
- [X] Other(s) [specify]
  **PREPAY/**

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note  plus (ii) any amounts under Section 3 of this Security Instrument

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

Initials

100025440003114458

BK4703PG0400

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County                      [Type of Recording Jurisdiction]
of    Henrico                                 [Name of Recording Jurisdiction]

**All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof**

which currently has the address of

**2818 SKELTON STREET**                                                        [Street]
**RICHMOND**                            [City/County], Virginia    23223    [Zip Code]
("Property Address)"

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows
1  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3 Payments due under the Note and this Security Instrument shall be made in U S

-6A(VA) (0109)                          Page 4 of 15                          Form 3047  1/01

## BK 4.103PG0410

23 **Release** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee Trustee shall release this Security Instrument Borrower shall pay any recordation costs Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law

24 **Substitute Trustee** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

**NOTICE THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witness

_____ (Seal)
SONJA M BLACK                    -Borrower

_____ (Seal)
MAURICE BLACK                    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                    -Borrower

BK4103PG0411

**STATE OF VIRGINIA,** HENRICO    County, ss

The foregoing instrument was acknowledged before me this **APR 1 3 2006**    by
SONJA M. BLACK AND MAURICE BLACK

My Commission Expires 12/31/07

Notary Public

EXHIBIT "A"    3805137

27-00074697

ALL THAT CERTAIN LOT PIECE OR PARCEL OF LAND WITH ALL
THE IMPROVEMENTS THEREON AND APPURTENANCES THEREUNTO
BELONGING, LYING AND BEING IN HENRICO COUNTY,
VIRGINIA AND DESIGNATED AS LOT 1, BLOCK D, SECTION C,
ON THE PLAN OF CLARENDON SUBDIVISION, WHICH PLAN IS
OF RECORD IN PLAT BOOK 36, PAGES 48 AND 49, IN THE
CLERK'S OFFICE CIRCUIT COURT OF HENRICO COUNTY,
VIRGINIA, REFERENCE TO WHICH PLAT IS HEREBY MADE FOR
A MORE PARTICULAR DESCRIPTION OF THE SAID LOT.